**WILLIAMS LAW, P.L.L.C.**
**Matthew C. Williams**

129 E. Pine Ave.
Meridian, ID 83642
Telephone (888) 385-2056
Fax (208) 908-6732
email matt@williamslawoffice.net
ISB# 6271

Attorney for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

---

| | |
|---|---|
| CHRISTINE ANDERSEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: |
| ) | |
| VALLEY COUNTY, an Idaho municipal ) | **COMPLAINT** |
| corporation; SKIP CLAPP, individually; ) | **AND** |
| SKIP CLAPP, in his official capacity as an ) | **DEMAND FOR JURY TRIAL** |
| employee of Valley County, and in his ) | |
| individual capacity; RON JENKS, ) | |
| individually; RON JENKS, in his official ) | |
| capacity as an employee of Valley County, ) | |
| and in his individual capacity; KENNETH ) | |
| ARMENT, individually; KENNETH ) | |
| ARMENT, in his official capacity as an ) | |
| employee of Valley County, and in his ) | |
| individual capacity; and DOES 1-25, ) | |
| inclusive, in the individual, official, ) | |
| corporate, municipal and governmental ) | |
| capacities, yet to be named, ) | |
| ) | |
| Defendants. ) | |

COMES NOW Plaintiff, Christine Andersen, by and through her counsel, Matthew C. Williams of Williams Law, PLLC, and for claims against Defendants, state, complain and allege as follows:

## I.    INTRODUCTION

1.1    This is an action brought to redress the deprivation under color of law, and under policy, regulation, official decision, custom or usage, of rights secured to Plaintiff by 42 U.S.C. § 1983. Plaintiff is seeking damages arising from violations of the First, Fifth, and Fourteenth Amendments of the Constitution of the United States of America, incorporated to the states through the Fourteenth Amendment of the United States Constitution, the Constitution of the State of Idaho, Article I § 17, and the laws of the state of Idaho, including but not limited to, Idaho Code sections 6-2101, *et seq.*, 67-6911,

## II.    PARTIES

2.1    At all times material to the sequence of events and claims described below, Plaintiff Christine Andersen (hereinafter "Ms. Andersen" or "Plaintiff") was a resident of the city of McCall, Valley County, State of Idaho.

2.2    Defendant Valley County is now and at all relevant times herein a municipal corporation organized and operated under the laws of the State of Idaho.

2.3    Defendant Valley County is a proper party-defendant for Plaintiff's state-law claims relating to the tortious conduct of its employees as provided in Idaho Code § 6-903(a).

2.4    Defendant Skip Clapp (hereinafter "Clapp") is and was at all material times hereto the Director of the Valley County Court Services located in the City of McCall, Valley County, Idaho.

2.5     Defendant Clapp, named in his individual and official capacities, is believed to have been a resident of Valley County, Idaho at all material times hereto.

2.6     Defendant Ron Jenks (hereinafter "Jenks") is and was at all material times hereto the Detention Supervisor under the supervision of Director Clapp, located in the City of McCall, Valley County, Idaho.

2.7     Defendant Jenks, named in his individual and official capacities, is believed to have been a resident of Valley County, Idaho at all material times hereto.

2.8     Defendant Kenneth Arment (hereinafter "Arment") is and was at all material times hereto the Director of Valley County Human Resources located in the City of McCall, Valley County, Idaho.

2.9     Defendant Arment, named in his individual and official capacities, is believed to have been a resident of Valley County, Idaho at all material times hereto.

2.10    The true names and capacities, whether individual, official, corporate, associate, or otherwise, of DOES 1 through 25, inclusive, are unknown to Plaintiffs, who therefore sues the DOE defendants by fictitious names. These Defendants may have caused damage(s) to Plaintiff by their own tortious conduct, including acts or failures to act in concert with other Defendants, or vicariously. Plaintiff will amend this complaint to show their true names and capacities when they have been ascertained.

### III.    JURISDICTION AND VENUE

3.1     Plaintiff brings this action and enjoin violations of the First, Fifth, and Fourteenth Amendments to the United States Constitution, as well as those rights guaranteed by the Idaho State Constitution.

3.2    This Court has original jurisdiction under the provisions of 28 U.S.C. § 1331 and/or 28 U.S.C. §1343 with respect to Plaintiff's claims arising under federal law.

3.3    This Court has supplemental jurisdiction under the provisions of 28 U.S.C. § 1367 with respect to Plaintiff's state law constitutional claims because those claims arose from the same case or controversy as his claims based on federal law.

3.4    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 acts and/or omissions alleged herein occurred within the District of Idaho.

### IV.    PRE-FILING OF TORT CLAIM NOTICES
### (STATE LAW CLAIMS)

4.1    Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

4.2    On or about April 22, 2015, Plaintiff presented and filed a tort claim for damages relating to the incident complained of herein to Defendant Valley County.

4.3    Plaintiff's claim was presented and filed with Defendant Valley County within one hundred eighty (180) days from the date the claim arose, or was reasonably discovered in accordance with Idaho Code § 6-906.

4.4    July 21, 2015 marked the ninetieth (90th) day from the day the above Notice of Tort Claim was filed.  Defendant neither approved nor denied Plaintiff's tort claim, effectively denying the same.

4.5    Plaintiff's claims were presented and filed in compliance with Idaho Code § 6-901, *et seq.*  As such, Plaintiff has fully complied with all statutory requirements relating to the filing of claims for damages (state law claims) against Defendant Valley County prior to commencement of this lawsuit.

## V.    STATEMENT OF FACTS

5.1    Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

5.2    Ms. Christine Andersen was hired by Valley County on July 26, 2004 in the capacity of a juvenile probation officer.

5.3    Plaintiff's duties included supervising and monitoring juveniles who had been placed on probation by the court, which are all of the responsibilities and duties of a sworn probation officer.

5.4    As a sworn Juvenile Probation Officer, Plaintiff was required to adhere to the Code of Ethics, which includes protecting the right of the public to be safeguarded from criminal activity, and identifying juveniles and discussion critical incidents outside of the official work setting.

5.5    Ms. Andersen's position was one that required a great degree of trust and responsibility.

5.6    Plaintiff's Employee Performance evaluation April 28, 2006 by her then manager, Terry Lewis, showed all performance either meeting expectations or exceeding them.

5.7    Plaintiff's Employee Performance evaluation October 24, 2007 by manager Douglas Miller demonstrated all areas were "outstanding" or "exceeds expectations" which are the two highest rating available out of five available.

5.8    Prior to the incidents complained of regarding the Defendants, Plaintiff had one negative mark on her record of eight and a half years, which was January 16, 2013 when Plaintiff was placed on a Performance Improvement Plan for a period of a month and a half related to

timeliness of returning telephone calls and delivery and filing of documents as they pertained to physical file upkeep.

5.9    Approximately October 2013, Defendant Clapp was hired as Plaintiff's direct supervisor.  Plaintiff's work continued to be good work between October 2013 and the date of her eventual termination.

5.10    On or about Sunday, September 21, 2014, Director Clapp had an inappropriate conversation with a juvenile inmate in the detention center.  The conversation went from asking the inmate about what his mother did for income, and challenging the inmate's response regarding his mother's disability payments.

5.11    In this same conversation, Director Clapp then inquired of the juvenile inmate's religion.  When the juvenile inmate responded that he was Catholic, Director Clapp responded that he went to the Catholic Church for a while, but that was just because he was "banging a girl that went there."

5.12    The conversation between Director Clapp and the juvenile inmate was overheard by another employee of the detention center.

5.13    Plaintiff was made aware of the conversation by the juvenile inmate's mother and reported to Director Clapp that the juvenile inmate's mother was upset with the comments.

5.14    Director Clapp's response was that he did not have that conversation with the juvenile and that he "would get" another employee to write a statement that confirmed he did not have the conversation.

5.15    Director Clapp did get another detention employee to sign a statement that the conversation never happened, however the employee Director Clapp convinced to sign the

statement was not working on the day in question.  The employee who was working confirmed he heard the conversation and the juvenile inmates report of the conversation was accurate.

5.16    Plaintiff documented the report of Defendant Clapp's misconduct within two different databases.

5.17    Plaintiff's reports regarding Defendant Clapp's misconduct, which was confirmed by the juvenile and another employee, instigated an investigation that was conducted by Defendant Kenneth Arment.

5.18    Due to the close relationship between Defendants Clapp and Arment, the investigation was poorly done with deliberate incompetence.

5.19    The complaint against Defendant Clapp was ultimately determined to be unfounded, which thereafter caused Defendant Clapp to retaliate against Plaintiff.

5.20    This incident and the follow up investigation occurred approximately 2 months prior to Plaintiff's unlawful termination.

5.21    In September 2014, Defendant Clapp wanted to find to try using a new treatment provider.

5.22    Defendant Clapp believed the new provider he wanted to try would save Valley County money.

5.23    The new provider was called Telehealth and delivered their services over Skype, by videoconference.

5.24    Defendant Clapp hand selected a probationer that attended the same church he attended to be the test case participant for treatment from the new provider.  This probation client is hereafter referred to as Client A.

5.25    There is no basis in law for Defendant Clapp to require the probationers to see a mental health professional selected by Defendant Clapp.

5.26    Plaintiff had been referring treatment to Family Services, which was the new treatment provider in town that took the place of the old treatment provider once he retired.

5.27    In general, Plaintiff felt many of her probationers needed treatment in an in person capacity.  She had not referred the Client A to Telehealth.

5.28    Plaintiff was supervising a group of girls on probation that were substance abusers, had mental health issues, were struggling with severe depression, and were cutters. Client A was one of these probationers.

5.29    Plaintiff had staffed the treatment program with Family Services and the representatives, who are trained treatment evaluators and providers, were adamant about that client's need for treatment in the group setting and felt treatment with Telehealth would not be conducive to the treatment she needed.

5.30    Plaintiff, in her trained capacity, agreed with Family Services that Client A was too high risk to use as the test case for Telehealth, as the treatment she needed was greater than could be delivered via teleconference.

5.31    When Defendant Clapp found out Plaintiff had not referred (recommended and pushed) Client A to Telehealth, he became physically angry.

5.32    Defendant Clapp pulled Plaintiff into his office and yelled at her for not advocating and pushing Telehealth to Client A and/or her family.

5.33    Defendant Clapp became verbally abusive, threatening that he would "write up" Plaintiff if she did not support his desire and push her clients, including Client A, to use his

Telehealth mental health services provider, regardless of the probationer's level of service needed as determined by professionals within the field.

5.34    Plaintiff asked Defendant Clapp several questions during his yelling at her.  There were:

1.    What about their duty to the probationers?

2.    What if the probationers want to continue treatment with the provider they are comfortable with and do not want to switch providers?

3.    What if the probationers need treatment at a higher level than what can be performed by video conference?

4.    How can we legally force the client to use Telehealth when we are not allowed to require them to use specific providers?

5.35    Defendant Clapp told Plaintiff that he didn't care if the probationers didn't want to go to Telehealth, that he didn't care what level of service they needed, and that he didn't care that they couldn't legally force the probationers to go to Telehealth.  Defendant Clapp told Plaintiff she was going to push Telehealth or she would be written up.

5.36    September 17, 2014 Plaintiff received a formal warning regarding failure to remove personal pictures and/or files from her work computer after being advised to in June of 2014 by Defendant Clapp.

5.37    On or about December 5, 2014, a team meeting was conducted with Plaintiff, Defendant Clapp and a local substance abuse treatment team regarding the treatment planning for probationers.

5.38    Present at this meeting were Jacques Lafay, Valley County Adult Probation Officer, Molly Wilson, Valley County Adult Probation Officer, Plaintiff, Defendant Clapp,

Misty Ruska from McCall Family Services, and at least one other person from McCall Family Services.

5.39    At this meeting Plaintiff's probation client, Client B, was discussed. Client B had many of the same issues Client A.

5.40    Client B was evaluated at McCall Family Services and the treatment providers recommended face to face treatment due to her issues as a cutter.

5.41    During this meeting, Ms. Ruska and others were asking questions regarding a different probation client. This client will be referred to as Client C.

5.42    Client C was an adult probation client that was formerly a juvenile probation client of Plaintiff for a period of 3 years.

5.43    Client C had agreed to treatment through Telehealth.

5.44    Ms. Ruska and others were trying to ask Plaintiff questions about Client C.

5.45    During this discussion, Defendant Clapp kept interrupting and telling them of his plan to use Telehealth and his reasons for forcing clients to use Telehealth.

5.46    Defendant Clapp questioned the treatment providers as to why they needed to have face to face contact with the probationers for treatment, essecond guessing the professionals in the field.

5.47    Ms. Ruska and others were attempting to explain Client C's issues to Mr. Clapp and that Client C did have a desire to be in the group setting.

5.48    Ms. Ruska and others were trying to ask Plaintiff questions due to her knowledge of Client C. Defendant Clapp forcefully jumped in and answered questions posed to Plaintiff by the team so as to prevent Plaintiff from providing her assessment of her long-term client.

5.49    Defendant Clapp's interest in Client C appeared to be something other than professional interest in Client C.  Defendant Clapp appeared to be trying to ferret out whether the providers were being influenced by Plaintiff.

5.50    After the discussion regarding Client C had gone on for sometime, Plaintiff asked if she could comment as she had supervised Client C for three years.

5.51    Defendant Clapp verbally exploded on Plaintiff, yelled at, embarrassed, ridiculed and chastised Plaintiff in front of the entire group of professionals and accused her of going against him and undermining his decision to use Telehealth.

5.52    As a probation officer, Plaintiff is prohibited from forcing a specific treatment provider upon her clients as long as the provider chosen provides the specific treatment recommended in the evaluation.

5.53    Defendant Clapp was less than qualified at that time to speak as to the needs of Client C, as he had no personal knowledge of her treatment needs or experience supervising or treating her.

5.54    Plaintiff had not voiced her opinion regarding what treatment would be most conducive to Client C at the time Defendant Clapp publicly humiliated her in front of the group.

5.55    On or about December 16, 2015, Ms. Andersen was performing within the scope of her employ.

5.56    An adult probationer whom Plaintiff had supervised while covering the maternity leave of the misdemeanor probation officer was concerned about the contact between the adult probationer's 13 year-old daughter and the 17 year-old granddaughter of a co-worker at the Valley County McCall Annex, where the juvenile detention center, misdemeanor probation, and juvenile probation are located.

5.57    Plaintiff discussed the sexual preference of one of the girls, which was well known in the public domain and had been publicized by the girl herself.

5.58    Plaintiff, being a mandatory reporter, simply informed the parents of the status of the law regarding sexual contact between someone over the age of 16 with someone younger than 16.

5.59    Plaintiff violated no law with her discussion with the two individuals.

5.60    Plaintiff violated no county policies when she discussed the status of the law with the two individuals.

5.61    On or about December 18, 2014, Defendant Skip Clapp, who was Plaintiff's direct supervisor, sent Plaintiff home on leave pending an investigation, alleging the co-worker had complained to her supervisor.

5.62    Defendant Clapp alleged Plaintiff had violated the child's rights and discriminated against her, and that Plaintiff had violated her oath as a probation officer and had committed a crime.

5.63    Defendant Clapp indicated, by sending Plaintiff home that day, she would be "given" a chance to resign and move on.

5.64    Defendant Jenks, also a close friend of Defendant Clapp's, fabricated the complaint, as the co-worker who was part of the conversation did not complain.  The co-worker was grateful for Plaintiff's care and caution in explaining the law to them.

5.65    On or about December 21, 2014, Plaintiff was informed the Board of Commissioners was firing her without an investigation being performed.

5.66    When Plaintiff informed Defendant Clapp she had spoken to an attorney and requested an official notification as to why she was being terminated without an investigation,

Defendant Clapp sloppily performed a hasty investigation within the time period of one day, then informed Plaintiff she either resign by December 26, 2014 or be fired.

5.67    Plaintiff retained counsel who demanded proof of the grounds upon which Plaintiff was being terminated.

5.68    Plaintiff was terminated on December 29, 2014 with the exit reason of violation of Valley County policy.

5.69    According to Defendants, determinate factors for Plaintiff's termination included:

a)    The incident of December 16, 2014 where Plaintiff allegedly made "inappropriate comments" in the workplace "regarding the sexual orientation and privacy matters of others in violation of county policy and federal discrimination laws;"

b)    Insubordination with supervisor in the presence of others during official business;

c)    "document past progressive discipline for conduct during the years 2012 and 2013 for job performance issues;" and

d)    the 2014 warning for an IT policy for using county property to store personal information.

5.70    Defendants further alleged that Plaintiff had downloaded pornographic material pertaining to minors with her own personal information, inferring improprieties upon Plaintiff and her actions, which were not true.  Defendants well knew that the materials Plaintiff had originally collected were evidence in a case.

5.71    Due to the Defendants' unlawful conduct, Plaintiff was forced to apply for unemployment.  The Idaho Department of Labor reviewed documents submitted by the County in response to a hearing notice.  The Department determined it was "not clear why the claimant

was discharged.  If discharged for a violation of policy that policy is not clear either.  There [is] nothing in the policy that addresses the claimant's specific conduct."

## VI.    DAMAGES

6.1    Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further alleges as follows:

6.2    Plaintiff's suspension a few days before, and subsequent termination the day after, Christmas caused her entire family to be in turmoil.

6.3    The loss of income and health benefits were particularly damaging to Plaintiff because she suffered from thyroid issues and an on the job knee injury which require regular treatment as well as periodic diagnostic tests.

6.4    Plaintiff fell into a deep depression and at times could not get out of bed or go grocery shopping.  She avoided public appearances due to the shame and humility she felt.

6.5    Plaintiff's children lost their happy and healthy identity.  They feared the family's stability and were afraid that the family would lose their home, their belongings and could not afford to eat.

6.6    The children suffered from the stigmatic aftermath of Plaintiff's firing at school.  Being a small community, rumors were circulated based upon Plaintiff's position supervising juveniles, that she had "done things to other kids" and that is why she had been fired.

6.7    Plaintiff's children feared going to school and having were forced to defend their mother's integrity.

6.8    This loss of stability caused one child in particular to start acting out and experimenting with alcohol.  The child now suffers from severe anxiety and depression and has attempted suicide on at least one occasion.   The child has been placed on a Section 504

disabilities accommodation because of the difficulties she suffers, which has affected her academically.

6.9    One of Plaintiff's children suffered a psychotic break from the stress placed on the family due to the Defendants' conduct and has suffered traumatic psychological injury as a result.

6.10    Plaintiff was forced to fight for eight (8) weeks for Ms. Andersen's benefits after her initial request for unemployment benefits was granted for failure to provide adequate reasoning for her dismissal, then the County filed an appeal forcing her to fight the appeal.

6.11    While Plaintiff fought for her unemployment benefits, and to this day, has sought employment within her field as well as other related fields and has been unable to find suitable replacement employment in the McCall/Valley County area.

6.12    The stigma of being "fired" attached to Plaintiff since she was required to fully disclose her record and reason for termination.  It was well known within the Valley County community that Plaintiff was "fired" from her position.

6.13    Plaintiff was forced to draw on Medicaid and food stamps, causing herself and her family embarrassment, shame, disappointment, and loss of hope, as well as having to draw her retirement to survive financially.

6.14    Plaintiff insisted on a "name clearing hearing" in front of the Valley County Commissioners and their accompanying attorneys.  Although definitive proof of her wrongful termination was tendered to the Commissioners, they still issued an 8-page report, which did not clear her name, thus further stigmatizing her.

6.15    This resulted in Plaintiff's name being published in the local paper as the "McCall woman" who was suing the County.  Plaintiff was further ostracized by the public as being

vindictive and "sue happy," damaging her ability to obtain suitable replacement employment in the area.

6.16    Plaintiff suffered loss of dignity, friends, and reputation.

6.17    When Plaintiff's unemployment was depleted, she was forced to withdraw her PERSI retirement, which she had contributed to for 16 years and was relying on it to be her income during retirement.

6.18    Plaintiff remains underemployed and has struggled mightily as a direct and proximate result of Defendants' conduct and her unlawful termination.

6.19    Plaintiff has had to hire the services of Williams Law, P.L.L.C. to assert her rights and seek redress for the damages she has suffered as a result of the unethical, illegal, intentional, reckless, and negligent conduct of the Defendants.

## VII.    CAUSES OF ACTION

### COUNT I
### VIOLATION OF 42 U.S.C. § 1983
### (General Allegations)

7.1.1    Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

7.1.2    In committing the acts complained of herein, Defendants acted under color of state law, and at times in concert and/or conspiracy with each other, pursuant to customs and policies applicable to their respective official capacities to deprive Plaintiff Christine Andersen of her constitutionally protected rights under the First, Fifth and Fourteenth Amendments of the Constitution of the United States, as well as her rights bestowed upon him by the Idaho State Constitution.

7.1.3   As a direct and proximate result of multiple violations of the law and Ms. Andersen's constitutional rights by Defendants, Plaintiff has general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C. § 1983.

7.1.4   The conduct of Defendants was preconceived, deliberate, intentional, willful, malicious, oppressive, negligent and/or reckless, and was of such a nature that damages, including punitive, should be imposed in an amount commensurate with the wrongful acts alleged herein, as allowed by law.

7.1.5   Plaintiff has had to seek the services of an attorney to seek redress for the violation of her rights and therefore should be awarded reasonable attorneys' fees and costs.

## COUNT II
## VIOLATION OF FIRST AMENDMENT – Freedom of Speech
### (Protected Activity)

7.2.1   Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

7.2.2   One of the two incidents given by Defendant Valley County as a basis of policy violation for termination of Plaintiff was with regards to alleged insubordination at a multi-team meeting on or about December 5, 2014.

7.2.3   Defendant Clapp supervised Plaintiff directly and exclusively.

7.2.4   After the meeting, Defendant Clapp never addressed the December 5, 2014 meeting with Plaintiff either orally or verbally, until the December 16, 2014 false allegations.

7.2.5   Plaintiff was not officially or unofficially reprimanded in any way for her conduct in the December 5, 2014 meeting, other than the verbal tirade by Defendant Clapp in front of the entire team.

7.2.6    Plaintiff's speech and conduct at the December 5, 2014 meeting were made pursuant to her official duties as a sworn juvenile probation officer.

7.2.7    Plaintiff was not insubordinate in articulating and advancing opinions in the team setting where relevant information from team members was encouraged while making the decision regarding the probationer.

7.2.8    Plaintiff's speech and conduct at the December 5, 2014 meeting were a matter of public concern in that Defendant Clapp's interest in the juvenile client appeared to be personal in nature and not focused on rehabilitating the probationer.

7.2.9    Plaintiff's speech and conduct at the December 5, 2014 meeting were of a public concern in that Defendant Clapp demanded the client receive a particular treatment from a specific provider which is strictly prohibited as it violates the client's civil rights.

7.2.10  Plaintiff was sworn as a juvenile probation officer to uphold and protect the rights of her clients.

7.2.11  Plaintiff's speech and conduct at the December 5, 2014 meeting was a motivating factor in the adverse employment action.

7.2.12  On or about December 16, 2014, Plaintiff was performing within the course and scope of her duties as a probation officer.

7.2.13  An adult probationer whom Plaintiff had supervised while covering the maternity leave of the misdemeanor probation officer expressed concerns to Plaintiff about her 13-year-old daughter using drugs and having interactions with other girls in the community which were substantially older than her daughter.

7.2.14  Plaintiff knew the girls the adult probationer disclosed both personally and professionally.

7.2.15  One of the girls whom the adult probationer disclosed concern about was the 17-year-old openly homosexual granddaughter of a co-worker.

7.2.16  Plaintiff cautioned the adult probationer that sexual behavior between a 13 year-old and 17 year-old were not lawful, and that numerous law violations could occur if a romantic relationship had been or may possibly be established.

7.2.17  As a juvenile probation officer, Plaintiff was sworn to protect the right of the public to be safeguarded from criminal activity.

7.2.18  Under Idaho law, the ages of consent to engage in sexual acts is 18 years of age, but 16 years of age in some circumstances.  At no time is sexual contact with a 13-year-old girl legal conduct in the State of Idaho.  Charges for sexual contact with a female under the age of 16 could range anywhere from lewd and lascivious with a minor under age 16 to rape.

7.2.19  Plaintiff was prohibited from identifying juveniles and discussing critical incidents outside of the official work setting under her oath as a juvenile probation officer.

7.2.20  Plaintiff knew a co-worker was the grandmother of the 17 year old in question.

7.2.21  In an affirmative action to safeguard the public from criminal activity, specifically the two minors at issue, Plaintiff brought the co-worker and the adult probationer together to discuss and address the issues.

7.2.22  The co-worker did not take exception to the discussion of her granddaughter's relationship with the 13 year old.

7.2.23  Plaintiff's advice to both the adult probationer and her co-worker were not different than if the 13 year old had been romantically interested in a 17-year-old boy. Plaintiff's speech and conduct on December 16, 2014 were made pursuant to her official duties as a sworn juvenile probation officer.

7.2.24  Plaintiff's speech and conduct were a matter of public concern of drug use and sexual contact between minors.

7.2.25  Plaintiff's speech and conduct were a motivating factor in the adverse employment action.

7.2.26  On December 18, 2014, Defendant Skip Clapp verbally suspended Plaintiff with pay pending an investigation of the December 16, 2014 incident.

7.2.27  Had the event of December 16, 2014 not taken place, Plaintiff would not have been summarily terminated.

7.2.28  As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiff has suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

7.2.29  The Plaintiff has had to seek the services of an attorney to seek redress for the violation of her rights and therefore should be awarded attorneys fees.

## COUNT III
## VIOLATION OF FIFTH AMENDMENT
### (Section 1983 Due Process Claim)

7.3.1   Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

7.3.2   Against Valley County published policies, Defendant Clapp verbally notified Plaintiff on December 18, 2014 that she was suspended with pay pending an investigation.

7.3.3   No investigation was commenced.

7.3.4   On December 21, 2014, Defendant Clapp commenced a closed-door meeting with the Board of County Commissioners in Valley County.

7.3.5    Defendant Clapp had informed Plaintiff that she could attend the meeting with the Valley County Commissioners, but she would not be allowed to speak at the meeting.

7.3.6    Defendant Clapp telephoned Plaintiff at approximately 2:00 p.m. on December 21, 2014 and informed her that the Board of County Commissioners had voted to terminate Plaintiff. Defendant Clapp advised Plaintiff that she had the option to resign prior to December 26, 2014 at 5:00 p.m.

7.3.7    Defendant Clapp then interviewed Plaintiff's witnesses on or about December 23, 2014, and the grandmother co-worker on December 24, 2014.

7.3.8    Valley County policy requires a written notice of intent to terminate is to be provided containing the basis for termination.

7.3.9    As a direct and proximate result of the actions and omissions of the Defendants, Plaintiff has been unable to pursue her given occupation.

7.3.10   Plaintiff's alleged reason for termination is publicly accessible to any and all prospective employers who require her to sign a release or seek comment from Valley County regarding her employment.

7.3.11   The contents of Plaintiff's employment file created by the Defendants has in effect "blacklisted" her and precluded her from any and all employment in her chosen field.

7.3.12   The information in Plaintiff's employment file created by the Defendants has in fact precluded Plaintiff for other employment outside of her chosen field.

7.3.13   As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiffs suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

## COUNT IV
## VIOLATION OF FIFTH AMENDMENT
**(Section 1983 Due Process Claim – Intentional Interference With the Expectancy of Entitlement Benefits)**

7.4.1    Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

7.4.2    As a direct result of Plaintiff's wrongful discharge, Plaintiff was forced to seek unemployment compensation in order to support herself and her two children.

7.4.3    During the course of the Idaho State Unemployment board's investigation of Plaintiff's application for unemployment benefits, Defendants failed to provide adequate evidence that Plaintiff was terminated for job-related misconduct.

7.4.4    Plaintiff was awarded unemployment as of February 25, 2015, backdated to December 28, 2014.

7.4.5    Defendant Kenneth Arment filed an appeal of the board's decision on behalf of Defendant on March 5, 2015.

7.4.6    Defendants provided no new additional information, lawful basis or citation of law which entitled them to a decision to the contrary of the Board's finding February 25, 2015.

7.4.7    Defendants' appeal, and specifically Defendant Arment's conduct, was deliberate with the malicious intent of intimidating, fatiguing, and causing severe emotional distress to Plaintiff after wrongfully terminating her, accusing her of violating federal law, and leaving her without income.

7.4.8    Defendants' appeal was a continuation of the abuse which Plaintiff had already suffered as a result of the Defendants' negligent and tortious conduct.

7.4.9    As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiffs suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

7.4.10    The Plaintiff has had to seek the services of an attorney to seek redress for the violation of her rights and therefore should be awarded reasonable costs and attorney's fees.


### COUNT V
### VIOLATION OF IDAHO CODE § 6-2101, *et seq.*
### (Idaho Public Employee Protection Act)

7.5.1    Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further alleges as follows:

7.5.2    Ms. Andersen was unlawfully retaliated against on multiple occasions by her supervisor, Defendant Clapp, after reporting misconduct by Mr. Clapp and for calling Mr. Clapp out for unethical and/or unlawful actions regarding the treatment of juvenile offenders which the Defendant County was under a duty to protect.

7.5.3    Defendants retaliated against Plaintiff for failing to commit unlawful acts, including, but not limited to, violation of probationers' rights in forcing them to choose a specific treatment or care provider.

7.5.4    Plaintiff questioned Defendants' unlawful acts and was discharged from employment as a result.

7.5.5    Plaintiff was engaged in protected activity in both instances.

7.5.6    Plaintiff performed an important public obligation as a Juvenile Probation Officer.

7.5.7    In both the December 5, 2014 alleged meeting incident, and subsequently in the December 16, 2014 alleged incident, Plaintiff exercised her legal right and/or aided or encouraged another to exercise theirs to protect juveniles and other vulnerable persons.

7.5.8    Plaintiff was engaged in protected activity in asserting her rights and/or those rights on behalf of another.

7.5.9    The retaliation by the Defendants, including the manufacturing of an accusation of violation of federal law, ultimately caused Plaintiff's wrongful termination.

7.5.10   Defendant Clapp sought to replace Ms. Andersen, and others similarly situated in class, by his "buddies" who were male and younger.

7.5.11   Plaintiff was an "at-will" employee.

7.5.12   Plaintiff was discharged for alleged cause.

7.5.13   Retaliation was the reason Defendants actively sought, and eventually succeeded, to terminate Plaintiff's employment.

7.5.14   The reasons Defendants terminated Plaintiff were unlawful and contravening to public policy.

7.5.15   Defendants continued to retaliate by interfering with Plaintiff's right to unemployment benefits which is contravening to public policy.

7.5.16   As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiff suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

7.5.17   The Plaintiff has had to seek the services of an attorney to seek redress for the violation of her rights and therefore should be awarded reasonable costs and attorney's fees.

**COUNT VI**

## VIOLATION OF THE FOURTEENTH AMENDMENT
### 29 U.S.C. § 621, *et seq.* – Age Discrimination in Employment Act

7.6.1    Plaintiffs incorporate and re-allege all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

7.6.2    At the time of Plaintiff's involuntary and illegal discharge from employment, Plaintiff was 48 years of age.

7.6.3    Defendant Valley County has a progressive disciplinary policy for employees of Valley County violates employment policies or fails to perform adequately.  These steps consist in order of:   Verbal coaching; oral warning; written warning or reprimand; Performance Improvement Plans; suspension without pay; probation; demotion; and dismissal.

7.6.4    Defendant Clapp informed Plaintiff on December 21, 2014 that she had to resign by December 26, 2014 or she would be fired.

7.6.5    Plaintiff did not violate Valley County policies and the firing was unwarranted.

7.6.6    The report of the "policy violating" incident of December 16, 2014 was provided by Defendant Ron Jenks, and the conduct was not reported by the co-worker who was a party to the conversation.

7.6.7    Defendant Ron Jenks was not present at the December 16, 2014 alleged incident and reported the incident in order to try and seek Plaintiff's position.

7.6.8    Defendant Jenks purposely provided a false report embellishing on facts obtained through third parties in order to displace Plaintiff from her position.

7.6.9    Defendant Jenks wanted to replace Plaintiff in her position.

7.6.10   Defendant Clapp deliberately sought to replace Plaintiff with one of his male co-workers.

7.6.11  Defendant Clapp, and those within Defendant Clapp's department, have a pattern of discrimination against women, including disparaging and unequal treatment toward women, not hiring women for full time positions in areas under his supervision, violating the HIPPA rights of women, and/or sexual advances toward female employees.  This disparaging behavior includes concocting policy violations against women while turning a blind eye to policy violations committed by male employees and refusing to discipline them.

7.6.12  Plaintiff's female sex was a motivating factor in Defendants' decision to treat Plaintiff differently than men he supervised, even repeatedly ignoring policy violations by men while allowing his employees to manufacture allegations against women.

7.6.13  As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiff has suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

7.6.14  The Plaintiff has had to seek the services of an attorney to seek redress for the violation of her rights and therefore should be awarded reasonable costs and attorney's fees.


## <u>COUNT VII</u>
## VIOLATION OF THE FOURTEENTH AMENDMENT
## 42 U.S.C. § 2000e, *et seq.* - Equal Opportunity Employment Act

7.7.1  Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

7.7.2   Defendant Ron Jenks provided Defendant Skip Clapp with a falsified third-party report of the December 16, 2014 incident.

7.7.3   Defendant Ron Jenks was not present at or during the conversation of December 16, 2014.

7.7.4    Defendant Ron Jenks applied for Plaintiff's vacated position upon termination.

7.7.5    Defendant Ron Jenks applied for Plaintiff's vacated position upon the urging and encouragement of Defendant Skip Clapp.

7.7.6    Defendant Ron Jenks is male employee of Valley County who does not have the caliber of experience that Plaintiff has.

7.7.7    Plaintiff was purposefully and intentionally discriminated against due to her age.

7.7.8    Plaintiff's age was a determinative factor in the Defendants' decision to terminate Plaintiff.

7.7.9    Defendants, including Defendant Clapp, have a pattern of discriminating against older women.

7.7.10    As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiffs suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

## COUNT VIII
## STATE LAW CLAIM DISCRIMINATION
### Idaho Code § 67-5911 – Discrimination

7.8.1    Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

7.8.2    Plaintiff was deliberately and maliciously targeted for unlawful termination by Defendants due to her age and/or sex.

7.8.3    As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiffs suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

7.8.4    The Plaintiff has had to seek the services of an attorney to seek redress for the violation of her rights and therefore should be awarded reasonable costs and attorney's fees.

## COUNT IX
## HOSTILE WORK ENVIRONMENT

7.9.1    Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

7.9.2    Plaintiff belonged to a protected group as she suffered discrimination due to her age and/or sex.

7.9.3    As a result of Defendants conduct, Plaintiff was subjected to unwelcome and unlawful harassment.

7.9.4    The harassment and/or abuse by the Defendants included disparaging comments in front of members of the professional community Plaintiff was required to work with as part of her job duties.

7.9.5    The harassment an/or abuse by the Defendants included application of a standard to Plaintiff that was not applied to the younger, male employees under the supervision and ultimate responsibility of the Defendants.

7.9.6    The harassment and/or abuse by the Defendants included false accusations of violating federal law.

7.9.7    Plaintiff suffered such unwelcome and unlawful harassment based upon her membership in the protected group and/or in retaliation for her protected behavior of Defendants.

7.9.8    Conduct interfered with Plaintiff's work performance.

7.9.9    The incidents described above were continuous and concerted.

7.9.10  Due to the severity and pervasiveness of the harassment, the harassment altered a term, condition, or privilege of the Plaintiff's employment and created an abusive working environment.

7.9.11  Plaintiff was forced to continue to work in a discriminatory hostile or abusive environment permeated with discriminatory intimidation, ridicule, and insult.

7.9.12  The retaliatory harassment of the hostile work environment caused Plaintiff's employment dismissal.

7.9.13  As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiffs suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

7.9.14  The Plaintiff has had to seek the services of an attorney to seek redress for the violation of her rights and therefore should be awarded reasonable costs and attorney's fees.


## COUNT X
## CONSPIRACY

7.10.1  Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

7.10.2  Plaintiff was allegedly terminated from employment as a direct result of the collusion between Defendants Skip Clapp, Kenneth Arment and/or Ron Jenks, who falsely accused Plaintiff of violating federal law

7.10.3  The collusion between Defendants Clapp, Arment, and/or Jenks caused a document reflecting said false accusation to be placed in her personnel file, greatly diminishing her ability to secure future employment in her given area of employment.

7.10.4  As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiffs suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

7.10.5  The Plaintiff has had to seek the services of an attorney to seek redress for the violation of her rights and therefore should be awarded reasonable costs and attorney's fees.


## COUNT XI
## FRAUD

7.11.1  Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further alleges as follows:

7.11.2  Defendant Jenks provided a false representation of the events, which transpired on December 16, 2014.

7.11.3  Defendant Clapp provided false information and/or knowingly accepted false information in order to terminate Plaintiff.

7.11.4  Defendants made false statements and/or failed to report material facts pertaining to Plaintiff's termination to the Idaho Department of Unemployment.

7.11.5  As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiff suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

7.11.6  The Plaintiff has had to seek the services of an attorney to seek redress for the violation of her rights and therefore should be awarded reasonable costs and attorney's fees.


## COUNT XII
## INTENTIONAL INTERFERENCE WITH THE EMPLOYMENT

7.12.1 Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

7.12.2 Defendants maliciously sought to have Plaintiff terminated from employment.

7.12.3 Defendants' motives were unlawful and discriminatory.

7.12.4 Defendants deliberately and tortuously interfered with Plaintiff's continued employment with Valley County.

7.12.5 As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiffs suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

7.12.6 The Plaintiff has had to seek the services of an attorney to seek redress for the violation of her rights and therefore should be awarded reasonable costs and attorney's fees.

<u>**COUNT XIII**</u>
**INTENTIONAL INFLICITON OF EMOTIONAL DISTRESS**

7.13.1 Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further alleges as follows:

7.13.2 Defendants' conduct was reckless and/or outrageous and in wanton disregard of the rights of Plaintiff, so much so that it extended beyond all acceptable bounds of decency and morality.

7.13.3 Defendants acted unlawfully and intentionally and/or with reckless disregard of the probability of causing severe emotional distress.

7.13.4 Due to Defendants' tortious conduct, Plaintiff suffered, continues to suffer, and with a high degree of likelihood will continue to be inflicted with severe emotional distress caused by the intentional acts of Defendants, including but not limited to: fear, humiliation,

mental anguish, loss of confidence, loss of self-respect, profound stress and anxiety, depression, anger, frustration, hopelessness and helplessness, and loss of sleep.

7.13.5  As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiff suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

7.13.6  Plaintiff has had to seek the services of an attorney to seek redress for the violation of her rights and therefore should be awarded reasonable costs and attorney's fees.

## COUNT XIV
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

7.14.1  Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

7.14.2  Defendants continually, negligently inflicted emotional distress upon Plaintiff.

7.14.3  Defendants had a continuing affirmative duty to perform their professional duties, each in their own capacity, in such a manner as to not to inflict emotional distress upon Plaintiff.

7.14.4  Defendants breached their duties to Plaintiff.

7.14.5  Plaintiff never interfered with Defendants' obligations under the above described duties.

7.14.6  Plaintiff suffered physically, mentally and emotionally due to Defendants' breach of their duties.

7.14.7  It was clearly foreseeable that the manner in which Defendants treated Plaintiff before, during and after Plaintiff's unlawful termination would cause her severe mental and emotional distress which would result in physical manifestations detrimental to Plaintiff's health, including sleeping issues and depressions.

7.14.8 Plaintiff was, is, and, with a high degree of likelihood, will continue to be inflicted with emotional distress due to the negligence of Defendants.

7.14.9 As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiff suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

7.14.10 The Plaintiff has had to seek the services of an attorney to seek redress for the violation of her rights and therefore should be awarded reasonable costs and attorney's fees.


## COUNT XV
## NEGLIGENCE

7.1.1   Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

7.15.2  Defendants Valley County, and their official representatives, including Defendant Clapp, Defendant Jenks, and Defendant Arment, owed a duty to act according to the standard of ordinary care in their official capacities, to wit, to treat Plaintiff with the dignity and respect in preservation of her constitutional rights.

7.15.3 Defendants Clapp, Defendant Jenks, Defendant Arment, and Defendant Valley county and other yet unmade and unknown individuals breached their duties by failing to perform their duties in said capacity.

7.15.4  These failures were a proximate cause of the Plaintiff's injuries alleged herein.

7.15.5 As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiff suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

7.15.6 The Plaintiff has had to seek the services of an attorney to seek redress for the violation of her rights and therefore should be awarded reasonable costs and attorney's fees.

## COUNT XVII
## VIOLATION OF 42 U.S.C. § 1983
### (Negligent Hiring, Negligent Retention, Failure to Discipline, Failure to Train or Inadequate Training – Deliberate Indifference)

7.16.1 Plaintiff incorporates and re-alleges all the foregoing paragraphs as if they were fully set forth herein, and further allege as follows:

7.16.2 Defendant Valley County, by and through its policies and procedures, through its supervision of the Valley County Court Services department, through the lack of qualification of Defendant Clapp and/or Defendant Arment, the lack of knowledge regarding supervision and/or human resources practices, leading to failure to train, inadequately train, and/or failure to provide discipline and/or adjustment to Defendant Skip Clapp's conduct and/or Defendant Arment's conduct, and appropriate management techniques.

7.16.3 As a direct and proximate result of the conduct and violations alleged hereinabove, Plaintiff suffered injury and damages as heretofore alleged, and will continue to suffer harm and damages into the future, all in an amount to be determined at trial.

7.16.4 The Plaintiff has had to seek the services of an attorney to seek redress for the violation of her rights and therefore should be awarded reasonable costs and attorney's fees.

## VIII.   PRAYER

WHEREFORE, Plaintiffs pray for judgment against the Defendants, each of them, as follows:

1.      For judgment against the Defendants, and each of them, in an amount to be proven at trial;

2.      For special damages in an amount to be proven at the time of trial;

3.      For general damages in an amount to be proven at the time of trial;

4.      For an award of compensatory and punitive damages against Defendants, and each of them, pursuant to 42 U.S.C. §§ 1983, 1988 in an amount to be proven at trial;

5.      An award of attorney's fees and costs against Defendants, each of them, pursuant to 42 U.S.C. §§ 1983, 1988; and as allowed by the laws of the State of Idaho.

6.      For such other and further relief as the court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

DATED this 26th day of December, 2016.

Williams Law, P.L.L.C.


By: _____/s/_____
          Matthew C. Williams
          Attorney for Plaintiff Christine Andersen