UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTINE ANDERSEN,<br><br>    Plaintiff,<br><br>v.<br><br>VALLEY COUNTY, an Idaho municipal corporation; SKIP CLAPP, individually; SKIP CLAPP, in his official capacity as an employee of Valley County; and in his individual capacity; RON JENKS, in his official capacity as an employee of Valley County and in his individual capacity; KENNETH ARMENT, individually; KENNETH ARMENT, in his official capacity as an employee of Valley County, and in his individual capacity; and DOES 1-25, inclusive, in the individual, official corporate, municipal and governmental capacities, yet to be named,<br><br>    Defendants. | Case No. 1:16-cv-00554-CWD<br><br>**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISQUALIFY COUNSEL (Dkt. 12)** |

Pending before the Court is Defendant Valley County's and Kenneth Arment's[1] motion to disqualify Plaintiff Christine Andersen's counsel and former Valley County Prosecuting Attorney, Matthew Williams. The Court heard oral argument from the parties on May 25, 2017. After review of the record, consideration of the parties' arguments and relevant legal authorities, and otherwise being fully advised, the Court issues the following memorandum decision and order granting Defendants' motion.[2]

## BACKGROUND

To better understand the motion to disqualify, the Court will set forth separately: (1) the background giving rise to Andersen's employment action against Valley County ("County"); and (2) a timeline containing relevant facts of Williams's role as the Valley County Prosecuting Attorney.

### I. Andersen's Employment with Valley County[3]

On July 26, 2004, Valley County hired Andersen as a juvenile probation officer. The juvenile probation officer position is part of the County's Court Services Office; the Court Services Director is the direct supervisor of probation officers. From 2004 through 2013, Andersen had one disciplinary mark on her record: in January of 2013, Andersen

---

[1] The Court collectively refers to Valley County and Arment as "Defendants" for the purpose of this motion unless indicated otherwise.

[2] All parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. 28.)

[3] To provide context in understanding the motion, the factual background of Andersen's employment is taken from her Complaint and declarations from the record. However, this does not constitute findings of fact by the Court.

was placed on a Performance Improvement Plan by her then supervisor, Doug Miller, related to timeliness of returning telephone calls, and delivery and filing of documents.[4]

In October of 2013, the County hired Defendant Skip Clapp as the Court Services Director. In September of 2014, Andersen reported to Human Resource Director, Defendant Kenneth Arment, inappropriate comments allegedly made by Clapp to a probation client, which instigated an internal investigation led by Arment. Andersen alleges this incident caused Clapp to retaliate against her.

Later the same month, Clapp contracted with a new mental health treatment provider for Court Services; the new provider delivered its services to clients by videoconference. Andersen believed many of her probation clients needed treatment in an in-person capacity, and thus, referred certain clients to a different treatment provider. When Clapp learned Andersen had not referred all of her clients to the video-provider, Clapp threatened to "write-up" Andersen. However, Andersen continued to refer her high risk clients to in-person providers. On or about December 18, 2014, Clapp sent Andersen home on leave pending an investigation regarding a complaint filed against her by her co-worker, Defendant Ron Jenks. Andersen was terminated from her employment on December 29, 2014, with the "exit reason" violation of County policy.

On December 26, 2016, Andersen filed her Complaint against the County, Clapp, Arment, and Jenks, alleging violations of the First, Fifth, and Fourteenth Amendments to

---

[4] On March 19, 2012, the Court Services Director at the time, Doug Miller, issued a "Verbal Coaching" notice to Andersen regarding "Behavior Outside of the Workplace/Appearance of Conducting Work on Personal Time." Dec. Miller, Ex. B (Dkt. 9-2). According to the document, a "Verbal Coaching" notice is not a disciplinary action. *Id.*

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISQUALIFY COUNSEL - 3**

the United States Constitution pursuant to 42 U.S.C. § 1983. (Dkt. 1.) She alleges also a Monell claim against the County for negligent hiring, negligent retention, failure to discipline, and failure to train, in addition to several state law claims.

## II. Williams as County Prosecuting Attorney

On August 6, 2004, Williams was appointed Valley County Prosecuting Attorney. Dec. Williams, ¶ 13 (Dkt. 26 at 3). In December of 2007, Williams hired Defendant Arment as a deputy prosecuting attorney. *Id.* at ¶ 15; Dec. Arment, ¶ 2 (Dkt. 13 at 2). From his employment as Prosecuting Attorney, Williams contends he is aware of one disciplinary action taken against Arment—a written warning for performance deficiencies issued to Arment by Williams. Dec. Williams, ¶ 17, (Dkt. 26 at 4). Williams opines now that "Arment was the single worst hiring decision I made while serving in my capacity as Valley County Prosecutor, and the only employee I ever had to reprimand for failing to show up to work on a consistent basis." *Id.*

During Williams's first term as Prosecuting Attorney, the County did not have a department handling the human resources function for County employees. *Id.* at ¶ 87. As a result, some duties were handled by the Prosecutor's Office. *Id.* During this time, Williams acknowledges the Prosecutor's Office consulted with other departments on some human resources issues regarding discipline and termination. *Id.* at ¶ 90. However, Williams contends none of the named Defendants in this lawsuit were the subject of any of these disciplinary or termination matters. *Id.* at ¶ 87. Williams's duties changed

sometime in 2008 or 2009, when the County Treasurer began handling the human resources function. *Id.* at ¶ 89.

During his first seven years as Prosecuting Attorney (2004 through 2011), Williams did function, at least some of the time, as counsel for the County in civil as well as criminal matters.[5] Dec. Williams, ¶ 45 (Dkt. 7). His civil representation included providing advice to the County on personnel and human resources issues. *Id.* During this period, however, Williams recalls only one instance where he consulted with then Court Services Director, Doug Miller, on a personnel matter. *Id.* at ¶ 46. The incident tangentially involved Defendant Clapp, who was cleared of any wrong doing and was never charged or disciplined for the incident. *Id.* at ¶ 48.

On January 13, 2013, Williams left his position as Prosecuting Attorney. Dec. Williams, ¶ 5. (Dkt. 26 at 2). On the same day, the Board turned over two of its three members. The remaining Board member, Gordon Cruickshank, has been on the Board since 2007. Cruickshank alleges he sought counsel from Williams on numerous occasions prior to January of 2013, as often as once per week, while he served as Prosecuting Attorney. Dec. Cruickshank, ¶¶ 3-4 (Dkt. 27-1 at 2). According to Cruickshank, when the Court hired outside counsel to handle employment disputes, Williams was present during

---

[5] On November 7, 2011, the Board passed Resolution 12-2, which declared that the Board would seek legal services from independent counsel instead of from the Prosecutor's Office. *Id.* at Ex. 2—Resolution 12-2 (Dkt. 26-2). As a result of the Resolution, the Board sought legal advice from the Idaho Counties Risk Management Program (ICRMP), rather than the Prosecutor's Office, moving forward.

conversations discussing details concerning certain unspecified facts, law, and strategies. *Id.* at ¶ 8.

In October of 2013, Clapp was hired as the Director of Court Services. Dec. Clapp, ¶ 2 (Dkt. 6 at 2); Compl., ¶ 5.9 (Dkt. 1 at 6). And, on June 1, 2014, Arment was hired from his deputy prosecuting position into the position of Human Resource Director by the Board. Dec. Arment, ¶ 2 (Dkt. 13 at 2).

## LEGAL STANDARD

"Motions to disqualify counsel are decided under state law." *Pesky v. United States*, No. CIV. 1:10-186 WBS, 2011 WL 3204707, at *1 (D. Idaho July 26, 2011) (citing *In re Cnty. of Los Angeles,* 223 F.3d 990, 995 (9th Cir.2000)). The Court must look also to the Idaho Rules of Professional Conduct as adopted and interpreted by the Idaho Supreme Court. *Parkland Corp. v. Maxximum Co.*, 920 F. Supp. 1088, 1091 (D. Idaho 1996); *see also* Mark J. Fucile, *Applied Legal Ethics: Disqualifying Counsel in Idaho State and Federal Courts*, 60 Advocate 41, 42 (2017) (The Idaho Rules of Professional Conduct "effectively supply the substantive law on whether an ethics violation warranting disqualification has occurred.").

"The right to disqualify counsel is within the discretion of the trial court as an exercise of its inherent powers." *United States v. Obendorf*, No. 1:15-CR-00254-BLW, 2016 WL 1595347, at *2 (D. Idaho Apr. 20, 2016) (citing *United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996)). "Regarding motions to disqualify counsel in Idaho generally, it is clear that '[t]he moving party has the burden of establishing grounds for

disqualification.'" *Id.* (quoting *Weaver v. Millard,* 819 P.2d 110, 115 (Idaho Ct. App. 1991)). Moreover, "[t]he cost and inconvenience to clients and the judicial system from misuse of the rules for tactical purposes is significant. Because of this potential for abuse, disqualification motions should be subjected to 'particularly strict judicial scrutiny.'" *Optyl Eyewear Fashion Int'l Corp. v. Style Co., Ltd.,* 760 F.2d 1045, 1050 (9th Cir.1985) (quoting *Rice v. Baron,* 456 F.Supp. 1361, 1370 (S.D.N.Y.1978)).

When deciding whether to disqualify counsel, "[the] goal of the court should be to shape a remedy which will assure fairness to the parties and the integrity of the judicial process. Whenever possible, courts should endeavor to reach a solution that is least burdensome to the client."[6] *Weaver,* 819 P.2d at 115.

## DISCUSSION

Defendants seek an order disqualifying Williams as counsel for Andersen on the ground that his representation will require Williams to use confidential information he acquired during the course of his representation to the disadvantage of the County, in violation of Idaho Rule of Professional Conduct 1.9(c).[7] Defendants allege also William's representation of Andersen is both prejudicial to the County and contrary to sound public policy. For the following reasons, the Court will grant Defendants' motion.

---

[6] Defendants cite to the four-part test in *Weaver v. Millard*, 819 P.2d 110, 116 (Idaho Ct. App. 1991), to determine whether an appearance of impropriety alone will give a party standing to interfere with an adverse party's choice of counsel. Plaintiff does not contest Defendants' standing to bring this disqualification motion.

[7] Defendants contend Williams's representation of Andersen is also in violation of the Idaho Rules of Professional Conduct 1.9(a) and 1.11. Because the Court finds grounds for disqualification under Rule 1.9(c), the Court needs not address Defendants' additional or alternative grounds for disqualification.

MEMORANDUM DECISION AND ORDER RE: MOTION TO DISQUALIFY COUNSEL - 7

## I. Disqualification Pursuant to Idaho Rule of Professional Conduct 1.9(c)

Defendants seeks to disqualify Williams under Idaho Rule of Professional Conduct 1.9(c) because, throughout the course of his employment as Prosecuting Attorney, Williams was intimately involved in various personnel issues and "undoubtedly" acquired confidential factual information about the Defendants. Defendants contend also that he acquired confidential information about other Valley County employees who will be witnesses in this case through his interactions, observation, and performance of his prosecutorial duties. Defendants allege Williams may seek to use this information in the current litigation to the disadvantage of Defendants.

Idaho Rule of Professional Conduct 1.9(c) provides:

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

   (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

   (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

The Court finds it highly likely that information Williams acquired through his representation of the County may be used to disadvantage the Defendants in this litigation. Most troublesome is the information Williams acquired though his past personal and professional relationship with Defendant Arment. When Williams was

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISQUALIFY COUNSEL - 8**

Prosecuting Attorney, he hired Arment as his Deputy Prosecuting Attorney in December of 2007—Williams and Arment worked side-by-side for five years. Now, Williams is pursuing a claim against the County for negligent hiring and training of Arment, Jenks, and Clapp by his former client, the Board of Commissioners of Valley County.

Williams's argument that none of the information gained during his working relationship with Arment is not relevant to Andersen's claim of negligent training and supervision of Arment, is unavailing. In his own declaration, Williams opines that hiring Arment as a deputy prosecutor was "one of the worst hiring decisions he had ever made." Through their five year working relationship, Williams acquired knowledge he would not otherwise have about Arment—knowledge that may very well disadvantage Defendants in this litigation. Williams cannot automatically flip a switch and purge himself of all the information he gained about Arment, including Arment's education, experience, skills, and abilities, during the course of his working relationship with him and while advising their mutual client—the County. This information would include by logical extension the weaknesses in human resource knowledge or deficits in training Arment had prior to the Board hiring Arment as Human Resource Director.[8]

---

[8] Although the facts in this lawsuit relate primarily to events which occurred from 2014 through 2015, when Williams was no longer Prosecuting Attorney, information Williams obtained through his attorney-client relationship with the County inevitably may come into play in connection with his representation of Andersen. For instance, when Williams provided counsel to former Court Services Director Doug Miller regarding Defendant Clapp.

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISQUALIFY COUNSEL - 9**

## II. Prejudice to County and Public Policy Concerns

Defendants contend they would be unfairly prejudiced if Williams is permitted to continue as counsel for Andersen. Specifically, they contend that, through Williams's role as Prosecuting Attorney he acquired information about the work history, discipline, training, evaluations, and qualifications of the people with whom he worked, and against whom Andersen now alleges negligence. Defendants argue also that public policy concerns support disqualification of Williams. They contend Valley County's employees are entitled to share with the Prosecuting Attorney—who is bound under Idaho Code Section 31-2604[9] to prosecute, defend, and advise the Board and officers—confidential information about their attitudes, litigation philosophy, procedures, strategies, polices and the like without fear that the Prosecuting Attorney will take that information and later use it against them.

Underlying the Court's determination as to whether disqualification is necessary "is the concern that parties to the litigation must have complete confidence in the judicial process that neither party has the possibility of an unfair advantage and that case will be presented on a level playing field." *Parkland Corp. v. Maxximim Co.*, 920 F.Supp 1088, 1093 (D. Idaho 1996).

---

[9] It is the duty of the prosecuting attorney to:

> To give advice to the board of county commissioners, and other public officers of his county, when requested in all public matters arising in the conduct of the public business entrusted to the care of such officers.

Idaho Code § 31-2604(2).

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISQUALIFY COUNSEL - 10**

Upon review of the declarations of Williams, Clapp, Arment, Miller, and Cruickshank, the Court concludes that there is more than a possibility that Andersen would have an unfair advantage in this case given the nature of Williams's long-standing relationship with the County and its employees, against whom Andersen asserts her claims in this lawsuit. Like his relationship with Arment, in the first seven years as Prosecuting Attorney, Williams routinely had confidential discussions with Board members and other County supervisors about sensitive personnel issues. While Williams may not have appeared as counsel for the County in any employment related lawsuits, this does not change the fact that many of the discussions Williams had with County employees were in confidence and in the context of the attorney-client relationship. Disqualification of Williams as an advocate for Andersen is the only means to maintaining a level playing field in this litigation.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendants' Motion to Disqualify (Dkt. 12) is **GRANTED**;

2) Plaintiff has 21 days from the date of this order to provide written notice to the Court indicating how and by whom she will be represented;

3) All deadlines in the Court's Case Management Order (Dkt. 20) and the responses to the pending motions to dismiss (Dkt. 5, 22) are stayed until further order of the Court; and

4) The telephonic status conference for June 14, 2017 is **VACATED and reset** for **June 22, 2017 at 3:00 p.m. MST**. Counsel for Defendants to initiate the call; once all parties are on the line, connect to the Courtroom at (208) 334-9945.

Dated: **May 26, 2017**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER RE: MOTION TO DISQUALIFY COUNSEL - 12**